IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Steven Roberts,                          :        Criminal No. 2:05-cr-00148
                                                  (Civil Case No. 2:09-cv-00088)

               Petitioner                :

     v.                                  :        Judge Marbley

United States of America,                :        Magistrate Judge Abel

               Respondent                :

# Report and Recommendation

Petitioner Steven Roberts, a federal prisoner, filed this action to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  This matter is before the Magistrate Judge on the motion to vacate sentence, respondent's response and supplemental response to the motion, petitioner's traverse, affidavit in support, supplemental and second supplemental traverse, and the exhibits of the parties.  Petitioner's motion for leave to supplement his traverse, Doc. No. 78, is **GRANTED**.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

On November 22, 2005, petitioner Roberts pleaded guilty to possession of a firearm and ammunition, in violation of 18 U.S.C. § 924(c), and conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846. *See* Doc. Nos. 39-42.  On May 1, 2006, the Court sentenced petitioner to the mandatory minimum terms of incarceration for his offenses of conviction, *i.e.*, an aggregate term of

fifteen years incarceration (ten years on count seven consecutive to a five year prison term on count six) plus five years supervised release.  Doc. Nos. 46, 48.  On February 14, 2008, the United States Court of Appeals for the Sixth Circuit affirmed petitioner's convictions and sentence.  *See* Doc. No. 59.  On March 12, 2008, the mandate issued.  Doc. No. 61.

On February 3, 2009, petitioner filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  He pleaded the following grounds for relief:

1. The conviction was obtained and sentence imposed in violation of the Sixth Amendment right to effective assistance of counsel.

   A.  Ineffective assistance of Mr. Akamine at plea bargaining.

   B.  Ineffective assistance of Mr. Reed at plea and sentencing.

   C.  Ineffective assistance of counsel on direct appeal.

2. The sentence imposed for violation of 18 U.S.C. 924(c) violates the Due Process Clause of the Fifth Amendment.

It is the position of the respondent that petitioner's claims are without merit.

## CLAIM ONE

In claim one, petitioner asserts that he was denied the effective assistance of counsel because attorney Nathan S. Akamine failed to convey the government's plea offer to him that he plead guilty to drug trafficking crimes without a conviction for possession of a firearm in furtherance of a drug trafficking crime and failed to advise him of the sentencing ramifications of refusing that plea offer.

Roberts similarly asserts that he was denied the effective assistance of counsel

2

because Joseph Reed, who represented him at the time of his guilty plea and sentencing, failed to advise him to accept the government's plea offer before the government filed a superseding indictment adding the firearms count, carrying a 5 year mandatory sentence to be served consecutively to the sentence for the drug conviction.

Roberts additionally asserts that he was denied the effective assistance of appellate counsel, Juni S. Ganguli, because his attorney failed to raise on direct appeal claims that no one advised him that he faced a maximum term of life imprisonment on Count Six and that the record failed to establish a factual basis for his guilty plea.  In support of his allegations, Roberts attached to the motion to vacate a January 22, 2009 Declaration which states, in relevant part:

> Mr. Akamine never showed me a plea bargain.  I believe that the only time that I saw him was at court.  If he did visit me at the jail, it was only once and he never talked to me about a plea offer.

> If Mr. Akamine had told [me] about the plea offer, explained the offer to me and told me that it . . . would be in my best interest to take the plea offer, I would have taken Mr. Akamine's advice.

> I hired Joseph Reed as my attorney to replace Mr. Akamine. The first time I met with Mr. Reed after I hired him, he told me that the government had made a ten year plea offer.  I asked him what he thought and whether I should take the offer.  His answer was "It's not me."  Mr. Reed never gave me his advice as to whether it would be in my best interest to take the ten year plea offer.  If Mr. Reed had advised me to take the ten year plea offer, I would have taken Mr. Reed's advice.

3

Doc. 62, at p. 20. On June 4, 2010, petitioner filed an undated[1] Declaration in Support of Traverse asserting that he never saw the August 4, 2005, letter from the Assistant United States Attorney; that he never had 500 grams or 700 grams of cocaine or 340 grams of crack cocaine; that Reed "never showed me a ten year plea he only spoke of one and when I ask[ed] him what should I do? His words to me were, it's not me. Mr. Reed never gave me his professional opinion." *Petitioner Roberts' Undated Declaration in Support of Traverse*, Doc. No. 76. Petitioner states that the only plea offer he saw was the one that he signed. *Id.*

Upon submission of petitioner's written attorney-client waiver, respondent provided affidavits from Nathan Akamine and Joseph Reed in response to petitioner's allegations. *See Supplemental Response*, Doc. No. 82. Akamine indicates in relevant part as follows:

> It is my practice to relay all plea offers to my clients. I do not recall the Government making any plea offer during the limited time I represented Mr. Roberts.
>
> I found no documentation that would indicate that the Government ever made a plea offer during the limited time I

---

[1]Under the provisions of 28 U.S.C. § 1746, whenever an affidavit is required the person submitting the sworn statement may, instead, make a statement

which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

. . .

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).

(Signature)"

represented Mr. Roberts.

*September 21, 2010 Affidavit of Nathan Akamine,* Doc. 82-1. Reed indicates in relevant part as

follows:

> I have been practicing law since 1983 in Ohio and have been practicing in the Southern District Court since 1987;
>
> I was retained by Alec Roberts to represent Steven Roberts on August 2, 2005.  A Notice of Substitution of Counsel was filed August 3, 2005.  I went to the Franklin County Jail to see m[y] client and discuss his case with him, and contacted the AUSA on the case and prior counsel to obtain discovery.
>
> I spoke with Steven Roberts the following week to review the discovery, discuss a Detention Review Hearing and the proposal by the AUSA to resolve the case with a plea to the 10 year mandatory minimum.   Additionally, we discussed providing assistance to the government in order to try for a 5K1.1 motion.  At that point, Roberts wanted to wait to see if he could get released at the review hearing.
>
> Subsequently, the government communicated a proposal to plead to the 10 year mandatory, with or without cooperation, but with a 2 point gun enhancement.  Roberts said he did not think the witnesses, whose identity he suspected, would show up so a Motion to Suppress was filed.
>
> I discussed Steve's options extensively with him.  I advised him of the mandatory time, if he did not get a 5K1.1 motion filed, and the additional 60 months if they filed a superseding indictment charging a 924(c).  We also discussed the career offender possibility since he had a prior drug conviction and a prior rape conviction.  All options were discussed and all his questions answered.
>
> Almost every client asks what they should do, plead or go to trial.  I have always made it a policy to advise them that the decision is entirely theirs as it is not my time to do.  I explain that I will provide all information I can, discuss the strength

and weakness of their cases, discuss my experience with juries and how they tend to view certain evidence and answer all their questions.  However, the ultimate decision is their's to make in consultation with family, friends, ministers or whomever they rely upon for advise.

Steve Roberts chose to hold out until it was clear he would lose at trial.  He attempted to proffer with the government but the information was deemed not credible or of no help.

I advocated vigorously for Mr. Roberts even convincing the Judge that a prior rape conviction in 1995 was not a crime of violence for purposes of the career offender category and giving him the mandatory minimums despite the guideline calculations being much higher.

Steven Roberts was aware throughout the process of the mandatory minimums and possible maximums for the offenses.  He was made aware of each offer by the government to plea bargain and chose to reject all by [sic] the last one.

I believe I fully discharged my duties to my client to fully advise him of the law, facts, offers and my experience with juries and that particular Judge.  I did not nor will I ever tell a client they must take a deal.

. . . . Mr. Roberts' counsel has never attempted to contact me to discuss my recollection of the events.

*September 17, 2010 Affidavit of Joseph D. Reed,* Doc. 82-2.

## MERITS

The Court's analysis begins with this recitation of the applicable law:

Defendants have a constitutional right to effective assistance of counsel during plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 58-59  (1985). The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that counsel's performance was constitutionally deficient during plea

6

> negotiations. *Hill,* 474 U.S. at 58. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001) (citing *Turner v. Tennessee,* 858 F.2d 1201, 1206 (6th Cir.1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Humphress v. United States*, 398 F.3d 855, 859 (6th Cir.2005). An attorney's failure to convey a plea offer satisfies the first prong of *Strickland*. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir.2003). Further, a substantial disparity between the plea offer and the potential sentence exposure constitutes

> strong evidence of a reasonable probability that a properly advised defendant would have accepted a guilty plea offer, despite earlier protestations of innocence. *See Magana v. Hofbauer,* 263 F.3d 542, 552-53 (6th Cir.2001) (finding the difference between a ten- and twenty-year sentence significant); *United States v. Day*, 969 F.2d 39 (3d Cir.1992) (finding ineffective assistance of counsel when trial counsel mistakenly described the penalties at trial as ten years rather than the twenty-two years the defendant received at sentencing, and where a plea offer of five years had been made); *United States v. Gordon*, 156 F.3d 376, 377-81 (2d Cir.1998) (holding that the wide disparity between the ten-year sentence recommended by the plea agreement and the seventeen-and-a-half years the defendant did receive was objective evidence that a plea would have been accepted).

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir.2003); *see also Griffin v. United States*, supra, 33 F.3d at 739 (evidentiary hearing warranted to determine whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant

7

sentenced to 156 months.) An attorney's failure to insist that his client accept the government's plea offer due to overwhelming evidence of guilt, however, does not constitute constitutionally ineffective assistance:

> The decision to plead guilty-first, last, and always-rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Smith,* 348 F.3d at 552. However, the United States Supreme Court noted in *Von Moltke v. Gillies*, 332 U.S. 708, 720 (1948), the difficulty of a layperson in determining whether they are guilty of the criminal charges, and stated that, "[p]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." *Id.* The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage as follows:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Smith,* 348 F.3d at 553, citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992); *see also Moss*

*v. United States,* 323 F.3d 445, 474 (6th Cir.2003) (Failure of defense counsel to "provide

professional guidance" regarding a defendant's sentencing exposure may constitute

deficient assistance). An attorney's obligation to advise his client applies equally to the

defendant who maintains his innocence of the charges, as other reasons may induce him

to enter a guilty plea. *United States v. Williams*, 2009 WL 348805 (W.D. Tenn. Feb.10, 2009),

quoting *North Carolina v. Alford, supra*, 400 U.S. at 33.

> The Sixth Circuit has expressly declined to adopt a
> requirement that a convicted defendant establish by objective
> evidence that he would have pleaded guilty had his counsel
> competently advised him. [ *Griffin v. United States*, 330 F.3d at
> 737) ] (citing *Dedvukivic v. Martin*, 36 Fed.Appx. 795, 798 (6th
> Cir.2002(unpublished). Thus, a court may rely on a defendant's
> self serving testimony that he would have accepted the plea
> agreement had his counsel sufficiently advised him. *Id.*

*United States v. Williams, supra.*

This *Report and Recommendation* will first consider petitioner Roberts' argument that

Nathan Akamine provided ineffective assistance of counsel by failing to communicate a

plea bargain offer from the Assistant United States Attorney, then his argument that Joseph

Reed provided ineffective assistance of counsel by failing to advise him to accept a plea

agreement offered by the government, and finally, his argument that Juni S. Ganguli

provided ineffective assistance of counsel on direct appeal.

Akamine's representation. As to the alleged ineffective assistance of Akamine, who

represented petitioner only briefly, the Magistrate Judge concludes that this claim lacks any

merit. Petitioner alleges that Akamine failed to communicate the government's plea offer of ten years incarceration. However, on August 3, 2005, shortly after petitioner's July 22, 2005, arraignment, and prior to the September 1, 2005, filing of the superseding indictment, Doc. No. 23, Reed filed a notice of substitution of counsel of record. Doc. No. 16. Akamine has no recollection of any plea offer being made during the limited time that he represented petitioner, and the government confirms that no plea offer was conveyed until after Reed was counsel of record. The government has attached copies of correspondence confirming that it conveyed no plea offer until after Akamine was no longer counsel of record. For his part, Roberts has offered no evidence that a plea offer was ever communicated by the government to Akamine.

On August 4, 2005, the Assistant United States Attorney sent Reed a copy of the lab reports and a memorandum of petitioner's interview with police, stating:

> It is my understanding there was also a search warrant done which resulted in the seizure of more drugs. Once I receive the lab reports, we are planning on superseding the indictment to include the drugs found in the search warrant.
>
> If Mr. Roberts wants to work out a plea bargain, perhaps we can resolve the case without the need for a superseding indictment. Once you return from your vacation, call me and we can arrange a time to meet and perhaps work out a plea agreement.
>
> I will forward the evidence related to the uncharged search warrant, when I receive it.

*Exhibit A, April 20, 2009 Response to Motion to Vacate,* Doc. 72. On August 23, 2005, the Assistant United States Attorney faxed a written plea offer to defense counsel, stating:

10

Enclosed is the proposed plea agreement for Mr. Roberts. The proposed guideline range is going to be quite high, in light of the significant quantities of crack cocaine which Mr. Roberts was selling. The one benefit is that I have not yet received the lab reports from the search warrants executed on his home and vehicle. Based upon the gross weight of the drugs seized, I believe potentially it will exceed 500 grams. The gross weight of one package was more than 700 grams. However, that may be cocaine powder rather than crack cocaine. I do not know yet. If there is 340 or so grams of crack found in the search warrant, that would potentially add an additional two levels to his guideline range.

If Mr. Roberts agrees to plead guilty to the proposed plea agreement by this Friday, we will not add that additional relevant conduct for the search warrant. However, I should have the lab report by Friday. So, if we do not have a plea agreement by Friday, we will seek a superseding indictment next week and add charges related to the search warrant.

In addition, I have included a two-level enhancement based on the guns found in the search. I believe it is possible that we could seek a 924(c) charge based on the guns found in the searches. However, we are willing to forgo that if Mr. Roberts agrees to the proposed plea agreement by Friday.

The one thing this plea agreement does not consider is Mr. Roberts' criminal history which is quite lengthy. I do not know if he is a career offender, but it is possible with his prior convictions for rape and robbery. If he pleads guilty, he must understand that a career offender determination is possible. If he is a career offender, that is something we will pursue at sentencing. A career offender designation would result in a guideline range of 360 months to life, prior to any 5K1.1 motion.

Please let me know tomorrow if we should proceed with our meeting on Friday at 9:00 . . . .

*Exhibit B to Return of Writ.* On August 24, 2005, the Assistant United States Attorney faxed

11

a revised plea agreement to defense counsel including language regarding a potential motion under 18 U.S.C. § 3553(e) and or § 5K1.1 for a downward departure from the sentencing guidelines if petitioner were to provide substantial assistance.  *Exhibit C, April 20, 2009 Response to Motion to Vacate*, Doc. 72. After the filing of the superseding indictment, on October 6, 2005, the government again conveyed two written plea offers to defense counsel, "one with cooperation and one without."  *Exhibit D, April 20, 2009 Response to Motion to Vacate*, Doc. 72. The Assistant United States Attorney advised counsel that if Roberts wanted to obtain a three level reduction in his recommended guideline sentence, the government wanted to have the plea agreement filed by October 8, 2005.  *See id.*  On November 15, 2005, petitioner signed a guilty plea agreement. On November 22, 2005, he entered his guilty plea to counts 6 and 7.  Doc. Nos. 40, 42.

Even assuming, *arguendo*, that Akamine improperly failed to convey a plea offer from the government to petitioner, petitioner cannot establish prejudice, as it appears undisputed from the record that the terms of any such plea remained open after Reed filed a notice of substitution of counsel of record and before the filing of the superseding indictment.  Therefore, to the extent that petitioner asserts Akamine denied him the effective assistance of counsel, it is without merit.

Reed's representation. As to petitioner's allegation regarding the ineffective assistance of Reed, the gravamen of Roberts' complaint appears to be that Reed did not tell him to plead guilty, not that Reed failed to perform his professional obligation to explain the proposed plea bargain to him, advise him of the sentencing consequences of the plea,

discuss the risks going forward and the likely sentences if he was convicted following trial.

Roberts' initial affidavit states: Reed

> told me that the government had made a ten year plea offer.  I asked him
> what he thought and whether I should take the offer.  His answer was "It's
> not me."  Mr. Reed never gave me his advice as to whether it would be in my
> best interest to take the ten year plea offer.

*Roberts' January 22, 2009 Declaration*, ¶ 5, Doc. 62, at p. 20. In an unsworn declaration filed June 4, 2009, Roberts assert that "when I ask[ed] him what should I do? His words to me were, it's not me.  Mr. Reed never gave me his professional opinion." Doc. 76-1. Petitioner does not controvert the factual assertions in Reed's affidavit that he discussed Roberts' options extensively with him, including the mandatory 10 year sentence and the consequences of a § 924(c) charge. *Reed's September 17, 2010 Affidavit*,  ¶ 5, Doc. 82-2, at p. 2. Nor does Roberts controvert Reed's assertion that, being fully informed, he first decided to wait and see if he were released on bail, then to see whether the court granted his motion to suppress. *Id.*, ¶¶ 3 and 4.

The defendant is the one who stands charged. The plea decision is his to make, not his attorney's. *Smith,* 348 F.3d at 552. Roberts was not entitled to have Reed make the plea decision for him, only to have Reed fully explain his options and the likely consequences of pursuing each. Roberts has failed to controvert Reed's factual assertion that he did perform that duty; consequently, petitioner is not entitled to habeas corpus relief.

Ganguli's representation:   Petitioner contends that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that

the government failed to establish a sufficient factual basis for his guilty plea and the District Court improperly failed to advise him he faced a potential maximum penalty of life incarceration on Count Six.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

> A. Were the omitted issues "significant and obvious?"
>
> B. Was there arguably contrary authority on the omitted issues?
>
> C. Were the omitted issues clearly stronger than those presented?
>
> D. Were the omitted issues objected to at trial?
>
> E. Were the trial court's rulings subject to deference on appeal?
>
> F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

G. What was appellate counsel's level of experience and expertise?

H. Did the petitioner and appellate counsel meet and go over possible issues?

I. Is there evidence that counsel reviewed all the facts?

J. Were the omitted issues dealt with in other assignments of error?

K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.1999). This list is not exhaustive, however, and need not produce a certain "score." *Id*. at 428.

This Court notes that the United States Court of Appeals for the Sixth Circuit rejected petitioner's claim that the District Court failed to comply with Fed. R. Crim. P. 11 in accepting petitioner's guilty plea by failing to advise him of the mandatory minimum sentences applicable to the charges to which he pleaded guilty, noting that this claim would have been reviewed on appeal for plain error only due to petitioner's failure to object, and the record failed to demonstrate plain error, since the prosecutor explained the provisions of the plea agreement and other evidence in the record indicated petitioner had been fully informed of the terms of the plea agreement. *See* Doc. No. 59. For these same reasons, petitioner cannot establish the ineffective assistance of appellate counsel based on his attorney's failure to raise on appeal an issue regarding the District Court's failure to advise him of the maximum sentence he faced on Count Six.

Petitioner signed a guilty plea agreement indicating that he understood he faced a

maximum possible term of life incarceration on Count Seven. Doc. No. 40; *see also* Doc. No. 39. He also acknowledged, at the time of his guilty plea, that he understood he faced a potential maximum term of life imprisonment on Count Seven. *Guilty Plea Transcript*, at 11. Under these circumstances, although the Court did not advise petitioner of the potential life term he faced on Count Six, petitioner has failed to establish any error affecting his "substantial rights" so as to constitute plain error. *See United States v. Todd*, 521 F.3d 891, 896 (8th Cir. 2008), citing *United States v. Olano*, 507 U.S. 725, 732 (1993). "A defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). Petitioner has failed to meet this standard here.

As to petitioner's contention that the record failed to reflect a sufficient factual basis for acceptance of his guilty plea, Special Agent Steve Ray summarized the facts as follows:

> In January 2005, Detective Michael Madry with the Columbus, Ohio division of Police, Strategic Response Bureau, was working in an undercover capacity buying crack cocaine. Through a confidential source, he met a female who agreed to act as a go-between to purchase crack cocaine for Detective Madry from a dealer by the name of Steven Roberts.
>
> On January 27, 2005, Detective Madry in his undercover capacity, made contact with this female. The female agreed to assist the undercover officer to purchase two and on-half ounces of crack cocaine from Roberts. She stated her fee would be $50 per ounce.

Detective Madry drove this female to 2075 Schenley Drive, the residence of Steven Roberts. The female went inside the residence and returned four to five minutes later. She advised Detective Madry that Stevie would sell her the two and one-half ounces of crack for $1800. Detective Madry provided the female the $1800 in city funds. The female indicated Detective Madry would owe her $125 for conducting this transaction for him. The female then went back inside 2075 Schenley Drive.

Approximately 10 minutes later, the female came back to the car. She advised Detective Madry that Stevie was cooking it up and it would be done shortly. She then went back inside the residence.

Minutes later, the female exited the residence, got into Detective Madry's vehicle and removed a plastic bag from her bra. She stated Stevie did not have the two and one-half ounces, but gave them what was inside the bag for $1700. Detective Madry weighed the bag and found it weighed less than two ounces. He gave the bag back to the female and told her to go inside and make it right.

The female went back inside the residence and returned moments later with Steven Roberts. Roberts brought a scale with him. He handed it to Detective Madry and stated Detective Madry's scale must be off. The female handed Detective Madry the plastic bag with the crack cocaine and he weighed it using Roberts' scale. That scale showed a weight of 66 grams. Detective Madry agreed to take the crack. He returned the scale to Roberts. Roberts told him to come back when he needed more.

Detectiv Madry dropped the female off after the deal. She advised that she was owed $25 because she had the $100 Stevie had given back to her when he did not have all the crack Detective Madry wanted to purchase. Detective Madry paid her $30 because he did not have enough change and then left the area.

The substance purchased was submitted to the Columbus,

Ohio Division of Police crime laboratory for testing. It proved to be 59.4 grams of cocaine base, a Schedule II controlled substance.

On February 11, 2005, the same female again took Detective Madry to 2075 Schenley Drive to make another purchase from Steven Roberts. Prior to the transaction, she called Steve Roberts and negotiated the sale of four and one-half ounces of crack cocaine for $3500.

On this occasion, Detective Madry accompanied the female inside the residence at 2075 Schenley. Roberts advised Detective Madry he had to leave to get the cocaine. Detective Madry gave Roberts the $3500. Roberts then left the residence, with the female, to pick up the cocaine.

Twenty minutes later, the female and Steve Roberts returned. Robert had three quarter size baggies of cocaine, which he took from his sweatshirt pocket. Roberts then took half of the contents of one of the baggies and placed it in a glass jar on the stove. He added baking powder and water to the jar and cooked the cocaine into crack, while Detective Madry waited in the kitchen. The female assisted Roberts as he cooked the crack cocaine. She obtained water for him and put it in the pan Roberts was using to cook the crack. She also helped him weigh the crack on a digital scale after it was cooked. She wrote down the weights on a piece of paper and kept a running total.

Once the crack cocaine had been cooked, Roberts handed Detective Madry two baggies of crack cocaine. This crack cocaine was subsequently submitted to the CPD laboratory for testing. It proved to be 110.9 grams of cocaine base.

On June 6, 2005, Detective Madry, again working in an undercover capacity, met another individual who agreed to take him to Steve Roberts to purchase crack cocaine. Detective Madry drove this individual to 2075 Schenley and provided the individual with $100. The individual went toward the garage/back yard area of this address. A few minutes later, the undercover agent observed Steven Roberts arrive at the

18

residence in a 1990 Cadillac.  He met with several individuals waiting for him and appeared to conduct several drug transactions.  Detective Madry saw Roberts meet with the individual to whom he had provided $100.  The individual then walked directly back to Detective Madry and provided him 1.3 grams of cocaine base.  Detective Madry paid this individual $20 for handling the transaction for him.

On June 8, 2005, a search warrant was executed at 2075 Schenley Drive. Steven Roberts was found inside with another individual.  Small quantities of crack and marijuana were found throughout the residence, as well as a .12 gauge shotgun under the living room couch and $2,169 in U.S. currency.

The defendant's 1990 Cadillac was also seized and a search warrant was obtained to search the vehicle.  Inside the glove compartment, investigating agents found 7.9 grams of cocaine base and 2.6 grams of cocaine powder.  In the trunk, agents found 24. 6 grams of cocaine base as well as a .44 caliber Ruger revolver, serial number 84-02327. The crack and revolver were found together inside a blue bag.  A digital scale was also found in the trunk.  All of these drugs were tested by the CPD l aboratory and proved to be Schedule II controlled substances.

Cooperating witnesses have confirmed that for at least the past two years, Steven Roberts has been involved in purchasing large quantities of cocaine powder, converting it to crack cocaine and then distributing the crack.  At least one witness has confirmed that Roberts keeps a firearm close at hand in his residence of in his car when he is distributing his product.  He often sends other people to pick up the cocaine for him from his supplier's vehicle, when his supplier delivers the cocaine to 2075 Schenley.

*Guilty Plea Transcript*, at 18-23.   Petitioner admitted the truth of these facts.  *Id.*, at 23.

A District Court must satisfy itself that there exists a sufficient factual basis to support each element of the crime to which a defendant seeks to enter a guilty plea. *United*

*States v. Grant*, 214 Fed.Appx. 518, unpublished, 2007 WL 143062, at *1  (6th Cir. Jan. 18, 2007), citing *United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995).  To establish petitioner's guilt on possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), the government would have been required to establish that petitioner possessed the firearm to advance or promote commission of his drug trafficking offense,  *see United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004); *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001), as well as "a specific nexus" between petitioner's possession of the firearm and his drug trafficking crime.  *Mackey*, 265 F.3d at 462.  Here, the government was in a position to prove petitioner possessed a firearm to further his drug trafficking business.  Police found a digital scale and a .44 caliber Ruger revolver inside of a plastic bag also containing crack cocaine in the trunk of his car out of which petitioner conducted drug transactions and transported drugs.  Police found another firearm under the couch inside of the house from which he sold and made crack cocaine, along with large sums of money and drugs.  Moreover, at least one witness confirmed that petitioner kept a firearm close to him in his house or car while distributing cocaine.  These facts were sufficient to establish a factual basis for this offense.

The record similarly reflects a sufficient factual basis for petitioner's guilty plea on conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846.

> [T]o establish a drug conspiracy, the government must be able
> to prove: "(1) an agreement to violate drug laws; (2)
> knowledge of and intent to join the conspiracy; and (3)

> participation in the conspiracy." *United States v. Gunter*, 551
> F.3d 472, 482 (6th Cir.2009). A mere buyer-seller relationship
> is insufficient to establish a conspiracy. *United States v. Anderson*,
> 89 F.3d 1306, 1310 (6th Cir.1996); *but cf. United States v. Price*,
> 258 F.3d 539, 545 (6th Cir.2001) (in some instances, a single sale
> may be sufficient to support a conspiracy conviction). The
> "mere buyer-seller relationship" is typified by situations akin
> to a "street buyer engaging in a discrete transaction." *Id.* citing
> *United States v. Phibbs*, 999 F.2d 1053, 1063-64 (6th Cir.1993)....
> In *United States v. Brown*, 332 F.3d 363 (6th Cir.2003), the Sixth
> Circuit Court of Appeals held that "evidence of repeat
> purchases provides evidence of more than a mere buyer-seller
> relationship. Moreover, a large volume of narcotics creates an
> inference of conspiracy." *Id.* at 373 (internal citations and
> punctuation omitted).

*United States v. Lopez*, 2010 WL 3634104, at *5 (E.D. Ky. Aug. 24, 2010). Again, the facts

petitioner admitted were true were sufficient to establish a factual basis for this offense.

Therefore, petitioner has failed to establish the ineffective assistance of appellate counsel.

Claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that the District Court's imposition of a five year

mandatory minimum sentence on his conviction on possession of a firearm in furtherance

of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), violates the Due Process

Clause, because the District Court erroneously imposed the five year term as the minimum

sentence required under the statute of conviction. *See Plea Agreement*, Doc. No. 40;

*Sentencing Transcript.*

In *United States v. Almany*, 598 F.3d 238 (6th Cir. 2010), the United States Court of

Appeals for the Sixth Circuit followed the reasoning of *United States v. Whitley*, 529 F.3d 150

21

(2nd Cir. 2008), holding that "the plain language of the firearm statute forbids a court from sentencing a criminal defendant under both the mandatory minimum sentence found in the firearm statute and another, greater mandatory minimum sentence in any other provision of law." *Id.*, at 241. Here, the District Court imposed the five year mandatory minimum term of Count Six consecutive to the ten year mandatory minimum term on Count Seven. However, the holding in *Almany* is currently being considered by the United States Supreme Court. *See Gould v. United States*, – U.S. –, 130 S.Ct. 1283 (2010); *Abbott v. United States,* – U.S. –, 130 S.Ct. 1284 (2010).

Therefore, the Magistrate Judge **RECOMMENDS** that claim two be stayed pending resolution of the issue in the United States Supreme Court. The Magistrate Judge further **RECOMMENDS** that petitioner's remaining claims be **DISMISSED**, and that his request for an evidentiary hearing be **DENIED.**

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge